**ZACHRY CONSTRUCTION CORPORATION,**
Petitioner,

v.

**PORT OF HOUSTON AUTHORITY OF HARRIS COUNTY, Texas,**
Respondent.

No. 12–0772.

Supreme Court of Texas.

Argued Nov. 6, 2013.

Decided Aug. 29, 2014.

Rehearing Denied Dec. 19, 2014.

---

R. Wes Johnson, The Gardner Law Firm, San Antonio, TX, for Amicus Curiae, Associated Builders and Contractors of Texas.

Joe F. Canterbury Jr., Canterbury Stuber Elder Gooch, Surratt, Shapiro & Stein P.C., Dallas, TX, for Amicus Curiae, Associated General Contractors of Texas, Inc.

James Corbin Van Arsdale, Vice President & General Counsel, Austin, TX, for Amicus Curiae, Associated General Contractors–Texas Building Branch.

Robert H. Fugate, Assistant City Attorney, Arlington City Attorney's Office, Arlington, TX, for Amicus Curiae, City of Arlington, Texas.

Charles Steven Estee, Office of the Dallas City Attorney, Dallas, TX, Amicus Curiae, City of Dallas, Texas.

Christopher Bedford Mosley, Sr. Assistant City Attorney, Fort Worth, for Amicus Curiae, City of Fort Worth, Texas.

Malinda York Crouch, Sr. Assistant City Attorney, Houston, TX, for Amicus Curiae, City of Houston.

Robert Caput, DFW Airport, TX, for Amicus Curiae, Dallas/Fort Worth International Airport Board.

Vincent L. Marable III, Paul Webb, P.C., Wharton, TX, for Amicus Curiae, Electrical Contractors Association, National Systems Contractors Association.

Bruce S. Powers, Assistant County Attorney, Vincent Reed Ryan Jr., Houston, TX, for Amicus Curiae, Harris County, Texas.

Hugh Rice Kelly, Austin, TX, for Amicus Curiae, Texans for Lawsuit Reform.

Jose E. De La Fuente, Lloyd Gosselink Rochelle & Townsend, P.C., Austin, TX, for Amicus Curiae, Texas Aggregates and Concrete Association.

George S. Christian, Texas Civil Justice League, Austin, TX, for Amicus Curiae, Texas Civil Justice League.

John B. Dahill, Austin, TX, for Amicus Curiae, Texas Conference of Urban Counties.

Heather Mahurin, Austin, TX, for Amicus Curiae, Texas Municipal League.

Richard Gary Thomas, Thomas Feldman & Wilshusen, LLP, Dallas, TX, for Amicus Curiae, The American Subcontractors Association, Inc.

David A. Escamilla, Sherine Elizabeth Thomas, Austin, TX, for Amicus Curiae, Travis County, Texas.

Michael Keeley, Dallas, TX, for Amicus Curiae, Zurich Surety.

Amanda Bowman Nathan, Sydney Gibbs Ballesteros, Robin C. Gibbs, Michael Absmeier, Jennifer Horan Greer, Gibbs & Bruns LLP, Brandon Trent Allen, Reynolds, Frizzell, Black, Doyle, Allen & Oldham, L.L.P., Houston, TX, Douglas W. Alexander, Alexander Dubose Jefferson & Townsend LLP, Austin, TX, for Petitioner Zachry Construction Corporation.

David E. Keltner, Marianne M. Auld, Kelly Hart & Hallman LLP, Fort Worth, TX, Catherine B. Smith, Michael A. Heidler, Marie R. Yeates, William D. Sims Jr., Vinson & Elkins LLP, David Hurst Brown, Brown & Kornegay, LLP, Karen Tucker White, Karen T. White, P.C., Lawrence J. Fossi, Fossi & Jewell LLP, Houston, TX, for Respondent Port of Houston Authority of Harris County, Texas.

Chief Justice HECHT delivered the opinion of the Court, in which Justice GREEN, Justice GUZMAN, Justice DEVINE, and Justice BROWN joined.

The common law permits a contractor to recover damages for construction delays caused by the owner, but the parties are free to contract differently. A contractor may agree to excuse the owner from liability for delay damages, even when the owner is at fault. The contractor thereby assumes the risk of delay from, say, an owner's change of plans, even if the owner is negligent. But can a no-damages-for-delay provision shield the owner from liability for deliberately and wrongfully interfering with the contractor's work? Before this case, a majority of American jurisdictions—including Texas courts of appeals, courts in all but one jurisdiction to consider the issue, and five state legislatures— had answered no. We agree with this overwhelming view and also conclude that the answer is the same if the owner is a local governmental entity for which immunity from suit is waived by the Local Government Contract Claims Act.[1]

Contractors are usually paid as work progresses and, in exchange for payment, must waive liens and claims related to the work paid for. But does such a general waiver release a claim the contractor has already asserted? Not, we think, unless the claim is specifically mentioned or the intent to do so is clear.

Our conclusions require us to reverse the judgment of the court of appeals[2] and remand the case to that court for further proceedings.

## I[3]

Petitioner, Zachry Construction Corporation, contracted to construct a wharf on the Bayport Ship Channel for respondent, the Port of Houston Authority of Harris County, Texas. The wharf would be a concrete deck supported by piers, extending out over the water. It would be used for loading and unloading ships carrying containerized goods and would be long enough—1,660 feet—for two ships to dock stern to bow. It would be built in five sections, each 135 feet wide and 332 feet long. The channel was to be dredged to a

---

1. TEX. LOC. GOV'T CODE §§ 271.151–.160.

2. 377 S.W.3d 841 (Tex.App.-Houston [14th Dist.] 2012).

3. The evidence in this case was hotly disputed at almost every turn. We do not pause in this rehearsal of the proceedings to note each disagreement. In reviewing any case tried to a jury, we must view the evidence "in the light most favorable to the verdict"—in this case a verdict for the petitioner—"crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not" and so summarize the evidence in that light. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 819 (Tex.2012) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005)).

depth of 40 feet beneath the wharf and surrounding area, and revetment placed along the shore beneath the wharf to prevent erosion. The total cost was $62,485,733.

The contract made Zachry an independent contractor in sole charge of choosing the manner in which the work would be conducted. Specifically, Section 5.10 of the contract provided:

> The Port Authority shall not have the right to control the manner in which or prescribe the method by which the Contractor [Zachry] performs the Work. As an independent Contractor, the Contractor shall be solely responsible for supervision of and performance of the Work and shall prosecute the Work at such time and seasons, in such order or precedence, and in such manner, using such methods as Contractor shall choose....

The provision benefitted the Port, insulating it from the liability to which it would be exposed were it exercising control over Zachry's work.[4] Still, the Port was fully engaged in reviewing Zachry's plans and overseeing construction.

Zachry's plan was innovative. It would use soil dredged from the channel to construct an 8–foot–wide earthen berm starting from the shore at either end of the worksite, extending out toward the center of the channel, then running parallel to the shore, forming a long, flat U-shaped wall in the channel around the construction area. Zachry would install a refrigerated pipe system in the wall and down into the channel floor that would carry supercooled brine, freezing the wall to make it impenetrable to the water in the channel. Zachry would then remove the water from the area between the wall and the shore. In this way, Zachry could work "in the dry", using bulldozers and other land equipment for the excavation and revetment work. Another advantage to this freeze-wall approach was that it would lower diesel emissions and require fewer nitrous oxide credits under environmental laws, giving the Port more flexibility in other construction projects. Zachry believed this approach would make the work less expensive and allow it to be completed more quickly.

And time was of the essence to the Port. Work began in June 2004 and was to be completed in two years. But two sections of the wharf had to be completed within 20 months—by February 2006—so that a ship from China could dock, delivering cranes to be used on the wharf. Zachry agreed to pay $20,000 per day as liquidated damages for missing the deadlines.

Nine months into the project, the Port realized that it would need two 1,000–foot berths to accommodate the ships it ultimately expected to service. A sixth 332–foot section would have to be added to the wharf. As a practical matter, only Zachry could perform the additional work, and Zachry and the Port began discussions on a change order. To complete the two sections of the wharf needed by February 2006, and to continue to work "in the dry", Zachry proposed to build another freeze-wall—a cutoff wall—though the middle of the project, perpendicular to the shoreline out to the existing wall, splitting the project into two parts. Zachry would finish the west end where the ship from China would dock, remove the wall barricading water from that area, then continue working on the east end "in the dry".

---

4. *See, e.g., Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 214 (Tex.2008) ("Generally, an owner or occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner. But one who retains a right to control the contractor's work may be held liable for negligence in exercising that right.") (citations omitted).

The Port had reservations about this plan. Near the shore, the cutoff wall would have to be built through the area where piers had already been driven into the channel floor. The Port's engineers were concerned that freezing the ground near the piers might destabilize them, weakening the wharf and making it unsafe. But the Port was also concerned that if it rejected Zachry's plan, Zachry might simply refuse to undertake the addition of a sixth section. So the Port did not raise its concerns with Zachry. Zachry, for its part, had already identified the issue, but its own engineers had concluded that any piers that might be affected could be insulated from the frozen ground. Change Order 4, using Zachry's approach to add a sixth section of the wharf at a cost of $12,962,800, was finalized September 27, 2005.

Two weeks later, the Port ordered Zachry to revise and resubmit its plans without the cutoff wall. The practical effect of the Port's order was to refuse to allow construction of the cutoff wall. Zachry protested that, under Section 5.10 of the contract, the Port had no right to determine the method and manner of the work, but the Port would not budge. Zachry's only option was to finish the westmost sections in time for the ship from China to dock, then remove the wall altogether and continue to work "in the wet", which would delay completion of the project and increase its cost.

In negotiating Change Order 4, the Port had promised not to impose liquidated damages for delay as long as the ship from China could dock when it arrived, though the Port had refused to put its promise in writing. Nevertheless, after the ship successfully docked, the Port began withholding liquidated damages from Zachry's payments. Eventually the Port desisted, but not until it had withheld $2.36 million. Zachry completed the project in January 2009, more than two-and-one-half years after the contract deadline.

In November 2006, several weeks after the Port refused to allow construction of the cutoff wall, Zachry sued. Zachry eventually claimed some $30 million in damages from delays caused by the Port. The Port countered that Section 5.07 of the contract precluded delay damages. That provision states:

> [Zachry] shall receive no financial compensation for delay or hindrance to the Work. In no event shall the Port Authority be liable to [Zachry] or any Subcontractor or Supplier, any other person or any surety for or any employee or agent of any of them, for any damages arising out of or associated with any delay or hindrance to the Work, regardless of the source of the delay or hindrance, including events of Force Majeure, AND EVEN IF SUCH DELAY OR HINDRANCE RESULTS FROM, ARISES OUT OF OR IS DUE, IN WHOLE OR IN PART, TO THE NEGLIGENCE, BREACH OF CONTRACT OR OTHER FAULT OF THE PORT AUTHORITY. [Zachry's] sole remedy in any such case shall be an extension of time.

Zachry argued, and the trial court ultimately agreed, that such a no-delay-damages provision could not be enforced if the Port's intentional misconduct caused the delay.

Zachry also sought recovery of the $2.36 million in delay damages withheld by the Port. The trial court held that the contract's liquidated damages provisions were invalid, and the Port has not challenged that ruling on appeal. But the Port responded that Zachry's claim to the liquidated damages was precluded by the releases it executed to obtain the periodic payments from which liquidated damages were withheld. The releases shared language stating:

[Zachry] hereby acknowledges and certifies that [the Port] has made partial payment to [Zachry] on all sums owing on Payment Estimate Number [——] and that it has no further claims against [the Port] for the portion of the Work completed and listed on the Schedule of Costs in Payment Estimate Number [——].[5] The trial court concluded that this language did not unambiguously release Zachry's claim to the liquidated damages withheld and asked the jury to decide what effect it had.

After a three-month trial, the jury found that the Port breached the contract by rejecting Zachry's cutoff wall design, causing Zachry to incur $18,602,697 in delay damages.[6] The jury also found that the delay "was the result of the Port's ... arbitrary and capricious conduct, active interference, bad faith and/or fraud."[7] The jury failed to find that Zachry had released its claim to the $2.36 million liquidated damages the Port withheld, but found that the Port was entitled to offset $970,000 for defective wharf fenders. The trial court rendered judgment for Zachry on the verdict.

Both the Port and Zachry appealed. The court of appeals held that the no-

5. There are releases in other forms, at least one of which specifically acknowledged, and excluded any effect on, contract claims at issue in pending litigation between the parties. The release for Payment Estimate Number 35 provided that the parties agreed "that Zachry Construction Corporation's execution of this Lien Release ... does not in any way release or modify the parties' rights and obligations under the Phase 1A Wharf and Dredging Contract or constitute a release of any claim or claims that the parties may present in the Lawsuit with respect to Phase 1A Wharf and Dredging Contract."

6. The jury was asked to find damages for "[t]he balance due and owed by the Port, if any, under the Contract, including any amount owed as compensation for any increased cost to perform the work as a direct result of Port-caused delays, and ... [t]he amount owed, if any, for additional work that Zachry was directed to perform by the Port in connection with the Contract." The jury found that the percentage of damages for hindrance or delay, as opposed to additional work, was 58.13%. The Port and Zachry have since stipulated that 100% of the damages found by the jury were for hindrance or delay.

7. In assessing damages, the jury was instructed as follows:

You are instructed that § 5.07 of the Contract precludes Zachry from recovering delay or hindrance damages, if any, unless you find that the delay or hindrance damages, if any, resulted from a delay or hindrance that was the result of the Port's actions, if any, that constituted arbitrary and capricious conduct, active interference, bad faith and/or fraud.

"Arbitrary and capricious" means willful and unreasoning action without due consideration and in disregard of the facts, circumstances, and rights of other parties involved.

"Active interference" means affirmative, willful action that unreasonably interferes with the other party's compliance with the contract. "Active interference" requires more than a simple mistake, error in judgment, lack of total effort, or lack of complete diligence.

"Bad faith" is conscious doing of a wrong for a dishonest purpose.

"Fraud" occurs when

1. a party makes a material misrepresentation,
2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,
3. the misrepresentation is made with the intention that it should be acted on by the other party, and
4. the other party suffers injury as a result of its reliance on the misrepresentation.

"Misrepresentation" means a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, and the promise of future performance is that the Port would comply with the terms of Change Order 4.

delay-damages provision of the contract barred Zachry's recovery of delay damages,[8] that Zachry unambiguously released its claims to $2. 205 million of the liquidated damages withheld,[9] and that the Port was entitled to the $970,000 found by the jury for defective wharf fenders.[10] The court reversed the judgment for Zachry and rendered judgment for the Port, awarding it the $10,697,750 in attorney fees found by the jury.[11]

We granted Zachry's petition for review.[12]

## II

■ Zachry argues that the no-damages-for-delay provision of the contract (Section 5.07) is invalid. The Port disagrees but also argues that even if the provision has no effect, the contract is otherwise silent on the recovery of delay damages, and the Local Government Contract Claims Act ("the Act")[13] does not waive governmental immunity from suit for any recovery a contract does not itself provide for. The court of appeals concluded that the no-damages-for-delay provision is enforceable and thus found it unnecessary to reach the immunity issue.[14] That approach was impermissible. Immunity "implicates a court's subject-matter jurisdiction over pending claims",[15] and " '[w]ithout jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case.' "[16] We must consider first whether the Act waives a local governmental entity's immunity from suit on a contract claim for delay damages the contract does not call for.

The issue has two parts. One is whether the Act's limitations on recovery help define and restrict the scope of the waiver of immunity. If not, those limitations have no role in determining a court's jurisdiction over a claim.[17] If so, as we conclude, the second part of the immunity issue is whether the delay damages Zachry seeks are permitted by the Act, so that the

**8.** 377 S.W.3d 841, 850–851 (Tex.App.-Houston [14th Dist.] 2012).

**9.** *Id.* at 857–858. The court was divided on this issue.

**10.** *Id.* at 861. Since the $155,000 in liquidated damages to which Zachry had not released its claim was completely offset by the $970,000 for the defective fenders, Zachry recovered nothing.

**11.** *Id.* at 865. Section 3.10 of the contracts states: "If [Zachry] brings any claim against the Port Authority and [Zachry] does not prevail with respect to such claim, [Zachry] shall be liable for all attorneys' fees incurred by the Port Authority as a result of such claim."

**12.** 56 Tex. Sup.Ct. J. 864 (Aug. 23, 2014).

**13.** Tex. Loc. Gov't Code §§ 271.151–.160.

**14.** 377 S.W.3d at 865 n. 25. The Port asserted governmental immunity in the trial court but did not request a ruling.

**15.** *Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95 (Tex.2012).

**16.** *Fin. Comm'n of Tex. v. Norwood,* 418 S.W.3d 566, 578 (Tex.2013) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (internal quotation marks omitted) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998))).

**17.** The effect of the Act's limitations on recovery is important, though not in this case, in responding to a governmental entity's plea to the jurisdiction, the ruling on which is subject to interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). If the limitations do not determine the scope of the waiver of immunity, an assertion of a claim on a contract covered by the Act would be enough to defeat the jurisdictional plea. Otherwise, a plaintiff would also be required to show that the damages claimed are permitted by the Act.

Port's immunity from suit is waived. We conclude they are.

### A

■ The Act waives immunity from contract suits for local governmental entities, such as the Port.[18] Section 271.152 of the Act states:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into *a contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, *subject to the terms and conditions of this subchapter.*[19]

A "contract subject to this subchapter" includes "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity".[20] The contract between the Port and Zachry qualifies.

The "terms and condition of this subchapter" referred to in Section 271.152 are found in the Act's other nine sections. Section 271.153 states:

(a) Except as provided by Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

---

**18.** The Act defines a "local governmental entity" as "a political subdivision of this state, other than a county or a unit of state government [as that term is defined elsewhere]," "including a ... special-purpose district or authority, including any ... navigation district...." TEX. LOC. GOV'T CODE § 271.151(3). The Port—known until 1971 as the Harris County Houston Ship Channel Navigation District—is a navigation district created in 1927 under the authority of article XVI, section 59 of the Texas Constitution, with the authority to sue and be sued. *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 812–813 (Tex.1993); *see also Jones v. Texas Gulf Sulphur Co.*, 397 S.W.2d 304, 306–307 (Tex.Civ. App.-Houston 1965, writ ref'd n.r.e.) (concluding in part that the Houston Ship Chan-

nel's immunity from *tort liability* was not waived by a "sue and be sued" clause). In 1970, the Court held that the same "sue and be sued" clause waived a navigation district's governmental immunity from *suit. Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812 (Tex.1970). The Port would then have been subject to suit, and possible contract liability, until the *Missouri Pacific* decision was overruled in *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–331 (Tex.2006).

**19.** TEX. LOC. GOV'T CODE § 271.152 (emphasis added).

**20.** *Id.* § 271.151(2)(A).

(3) damages for unabsorbed home office overhead.

(c) Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).[21]

Section 271.154 provides for enforcement of contractual adjudication procedures.[22] Section 271.155 preserves defenses other than immunity.[23] Section 271.156 limits the Act's waiver of immunity to suits filed in state court.[24] Section 271.157 makes clear that the waiver of immunity does not extend to tort claims.[25] Section 271.158 provides that the Act only waives immunity and does not grant it.[26] And Section 271.160 precludes a finding of joint enterprise.[27]

■ Whether the various provisions of the Act define the scope of the waiver of immunity depends on the statutory text. As a rule, a modifier like the last "subject to" phrase in Section 271.152 applies to the nearest reasonable referent.[28] The candidates are "contract", "claim", "adjudicating", and "waives". We do not think the phrase modifies "contract". Earlier in the sentence, the Act is made applicable to any "contract subject to this subchapter", and it would be needlessly redundant to reiterate a few words later that the contract is subject to the Act's terms and conditions.[29] Nor do we think the phrase modifies "claim". Section 271.158,[30] for example, provides only that the Act does not grant immunity and says nothing about the nature of the claim for which immunity is waived. And we do not think the "subject to" phrase modifies "adjudicating". If it did, only the adjudicatory process would be governed by the Act's terms and conditions. This reading might make sense for the recovery limits and preservation of procedures and defenses provided in Sections 271.153,[31] 271.154,[32] and Section 271.155,[33] respectively. Those three sections relate to the litigation and adjudica-

21. *Id.* § 271.153.

22. *Id.* § 271.154 ("Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.").

23. *Id.* § 271.155 ("This subchapter does not waive a defense or a limitation on damages available to a party to a contract, other than a bar against suit based on sovereign immunity.").

24. *Id.* § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court.").

25. *Id.* § 271.157 ("This subchapter does not waive sovereign immunity to suit for a cause of action for a negligent or intentional tort.").

26. *Id.* § 271.158 ("Nothing in this subchapter shall constitute a grant of immunity to suit to a local governmental entity.").

27. *Id.* § 271.160 ("A contract entered into by a local government entity is not a joint enterprise for liability purposes.").

28. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152 (2012).

29. *Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex.2005) ("We must avoid, when possible, treating statutory language as surplusage.").

30. TEX. LOC. GOV'T CODE § 271.158.

31. TEX. LOC. GOV'T CODE § 271.153.

32. *Id.* § 271.154.

33. *Id.* § 271.155.

tion of a claim. But the other four sections, limiting the Act's coverage to suits in state court on contract claims, providing that immunity is not granted, and precluding a finding of joint enterprise, have little, if anything, to do with the adjudication on claims. These sections—271.156,[34] 271.157,[35] 271.158,[36] and 271.160,[37] respectively, relate to the scope of immunity rather than the conduct of litigation.

The "subject to the terms and conditions" phrase in Section 271.152 incorporates the other provisions of the Act to define the scope of its waiver of immunity. The waiver does not extend to tort suits, suits in federal court, or allow recovery beyond that permitted by Section 271.153. But Section 271.152, as qualified by this "subject to" phrase also does not preclude other defenses or other contractual procedures, or confer immunity or suggest joint enterprise. The "subject to" phrase most reasonably refers to "waives", thus making the provisions of the Act limitations on the waiver of immunity. Section 271.152 must be read as follows: "A local governmental entity ... waives sovereign immunity to suit ... subject to the terms and conditions" of the Act.

We reached this result in *Tooke v. City of Mexia*[38] without the analysis just laid out because it seemed obvious. The Tookes sued the City of Mexia for breach of contract, "asserting that they had relied on a three-year term in purchasing equip-ment. They claimed unspecified damages, but requested jury findings only on lost profits and attorney fees".[39] They did not claim that the City failed to pay for work actually performed; rather, they sought recovery only for lost profits they would have made had the contract continued— "consequential damages excluded from recovery under [Section 271.153]."[40] Even though the Tookes' contract claim fell within Section 271.152,[41] we concluded— because they did not "claim damages within [Section 271.153's] limitations"—that "the City's immunity from suit on the Tookes' claim has not been waived."[42] This was true even though the Tookes might have proved that the City breached the contract.

The text of Section 271.152 and our decision in *Tooke* ought to have settled the matter, but courts of appeals have read our decision in *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*[43] to retreat from *Tooke*. There, developers sued an area water authority for reimbursement of part of their costs of building water and sewer facilities, which the authority had agreed to pay out of voter-approved bond funds.[44] No bonds had been approved, but the developers claimed that the water authority had breached the contract by campaigning against approval, thereby forestalling its reimbursement obligation.[45] The water authority argued in

34. *Id.* § 271.156.

35. *Id.* § 271.157.

36. *Id.* § 271.158.

37. *Id.* § 271.160.

38. 197 S.W.3d 325 (Tex.2006).

39. *Id.* at 330.

40. *Id.* at 346.

41. *Id.* at 329–330.

42. *Id.* at 346.

43. 320 S.W.3d 829 (Tex.2010).

44. *Id.* at 833–834.

45. *Id.* at 834 (re 2006 bond election); *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 5 (Tex.App.-Houston [14th Dist.] 2008) ("*Kirby III*") (re 1998 elections), *aff'd*, 320 S.W.3d at 843–844.

part that because no bonds had been approved, its obligation to reimburse the developers had not been triggered, nothing was "due and owed" under Section 271.153(a)(1), and *for that reason,* immunity was not waived.[46] In other words, *because* there was no liability, there were no recoverable damages and, therefore, no waiver of immunity. But the premise—no liability—was disputed, and if the water authority had breached the contract by opposing bond approval, then the developers claimed only the reimbursement under the contract as damages. And such damages, we held, were "due and owed" under Section 271.153(a)(1).[47] "The purpose of section 271.153," we explained, "is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists."[48] We did not suggest that Section 271.153 permits a waiver of immunity from suit for a claim for damages this Section prohibits altogether. The developers argued that they had damages recoverable under Section 273.153;[49] they did not address, and we did not consider, whether immunity would have been waived for their claim of breach even if they sought only damages not recoverable under Section 271.153. We would not have engaged in such an analysis without acknowledging the conflict with our opinion in *Tooke.*[50]

The Austin Court of Appeals has laid out the case for confining the scope of the Act's waiver to Section 271.152 in its opinion in *City of San Antonio v. Lower Colorado River Authority.*[51] LCRA reasons that immunity from suit and immunity from liability are distinct concepts, that the former may be waived for a claim on which a governmental entity is not liable, and that the Act serves this very purpose.[52] We agree with all but the conclusion. As we have explained, Section 271.153's limitations on recovery are incorporated into Section 271.152 by its last "subject to" clause and are thereby conditions on the Act's waiver of immunity. We disagree with *LCRA* that this reading of the Act makes its waiver of immunity dependent on ultimate liability. The Act waives immunity for contract claims that meet certain conditions: the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc. The waiver does not depend on the outcome, though it does require a showing of a substantial claim that meets the Act's conditions. *LCRA* argues that this view of the Act makes Section 271.153 a grant of immunity, a construction precluded by

46. 320 S.W.3d at 839–840; Brief of Respondent Clear Lake City Water Authority at 38 (No. 08–1003).

47. 320 S.W.3d at 839–840.

48. *Id.* at 840.

49. 320 S.W.3d 829, *passim;* Reply Brief of Petitioners Kirby Lake Development, Ltd., et al. at 11–14.

50. In *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 412–413 (Tex.2011), Sharyland contracted to build a water-supply system for the City of Alton. Sharyland sued the City for breach, claiming damages for injury to its system caused by contractors engaged by the City under another contract to build a sanitary sewer system. We concluded that while the claim was covered by Section 271.152 and was therefore one for which immunity was waived, the damages sought had nothing to do with the contract between Sharyland and the City and thus were "not a 'balance due and owed' under *that* contract" recoverable under Section 271.153. *Id.* at 413. As in *Kirby Lake,* however, the issue whether Section 271.153 is jurisdictional did not arise, and we did not consider it.

51. 369 S.W.3d 231 (Tex.App.-Austin 2011, no pet.).

52. 369 S.W.3d at 235–238.

Section 271.158. But again, Section 271.153 does not add immunity that Section 271.152 takes away; Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived.

■ By "substantial" claim we mean, as we held in *Texas Department of Parks and Wildlife v. Miranda*, that the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail.[53] In *Tooke*, the only damages claimed were precluded by Section 271.153, and therefore immunity was not waived. Had the Tookes claimed payment for work done, immunity would have been waived, regardless of whether the Tookes could prevail, as long as the Tookes had some supporting evidence.

We conclude that the Act does not waive immunity from suit on a claim for damages not recoverable under Section 271.153.[54]

**B**

■ Under Section 271.153(a)(1), the "amount of money awarded . . . for breach of contract" includes "the balance due and owed . . . under the contract" as amended, "including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays".[55] Section 271.153(b) precludes recovery of consequential damages, "except as expressly allowed under Subsection

**53.** 133 S.W.3d 217, 226–228 (Tex.2004) ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. If . . . the issue is one of pleading sufficiency [ ] the plaintiffs should be afforded the opportunity to amend [unless] the pleadings affirmatively negate the existence of jurisdiction. . . . However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. . . . If the evidence creates a fact question . . . the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." (citations omitted)).

**54.** We disapprove the following cases to the extent they are to the contrary: *Santa Rosa Indep. Sch. Dist. v. Rigney Const. & Dev., LLC*, No. 13–12–00627–CV, 2013 WL 2949566, at *5 (Tex.App.-Corpus Christi June 13, 2013, pet. denied) (mem.op.); *Roma Ind. Sch. Dist. v. Ewing Const. Co.*, No. 04–12–00035–CV, 2012 WL 3025927, at *4 (Tex.App.-San Antonio July 25, 2012, pet. denied) (mem.op.); *Corpus Christi Indep. Sch. Dist. v. TL Mech.*, No. 13–11–00624–CV, 2012 WL 1073299, at *3 (Tex.App.-Corpus Christi Mar. 29, 2012, pet. denied) (mem.op.) (note, however, that the court noted that plaintiff sought only contract damage and expressly did not claim any amount for lost profits); *City of San Antonio ex rel. San Antonio Water Sys. v. Lower Co. River Auth.*, 369 S.W.3d at 236–238; *City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900, 909–910 (Tex. App.-Fort Worth 2011, no pet.); *Jones v. City of Dallas*, 310 S.W.3d 523, 527–528 (Tex. App.-Dallas 2010, pet. denied) (note, however, that the court addressed an additional issue arising because the contract specifically provided for "lost profits" damages); *Clear Lake City Water Auth. v. MCR Corp.*, No. 01–08–00955–CV, 2010 WL 1053057, *10–11, (Tex. App.-Houston [1st Dist.] Mar. 11, 2010, pet. denied) (mem.op.); *Dallas Area Rapid Transit v. Monroe Shop Partners, Ltd.*, 293 S.W.3d 839, 842 (Tex.App.-Dallas 2009, pet. denied) (note, however, that there was a dispute over whether there was a "balance due and owed"); *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (note, however, that there was a dispute over whether the "balance due and owed" would include increased labor costs); *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.-Dallas 2008, pet. denied) (note, however, that the court pointed out that the record did not establish that the claim was solely for damages excluded by the statute, and cited *Tooke*).

**55.** *Id.* § 271.153(a)(1).

(a)(1)".[56] The Port contends that no balance can be due and owed under a contract unless the contract expressly calls for payment.

No such requirement can be found in the statute's text. The phrase, "balance due and owed/owing", is not defined in the Act, and the Legislature has not used it except in three other statutes waiving governmental immunity, where it is also undefined: the State Contract Claims Act,[57] the County Contract Claims Act,[58] and the State Agency Contract Claims Act.[59] The word "due" simply means "owing or payable"[60] and "owing" means "unpaid".[61] A

"balance due and owed … under the contract" is simply the amount of damages for breach of contract payable and unpaid. Direct damages for breach—"the necessary and usual result of the defendant's wrongful act"[62]—certainly qualify.

Section 271.153(a)(1) does not require the "balance due and owed … under the contract" to be ascertainable from the contract because, for one thing, this Section expressly includes "any amount owed as compensation … for owner-caused delays", an amount which cannot be determined in advance, when the contract is executed. To "include" means "[t]o contain

---

**56.** *Id.* § 271.153(b).

**57.** Tex. Gov't Code § 2260.003(a) ("The total amount of money recoverable on a claim for breach of contract under this chapter may not … exceed an amount equal to the sum of: (1) the balance due and owing on the contract price; (2) the amount or fair market value of orders or requests for additional work made by a unit of state government to the extent that the orders or requests for additional work were actually performed; and (3) any delay or labor-related expense incurred by the contractor as a result of an action of or a failure to act by the unit of state government or a party acting under the supervision or control of the unit of state government.").

**58.** Tex. Loc. Gov't Code § 262.007(b) ("The total amount of money recoverable from a county on a claim for breach of the contract is limited to the following: (1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration; (2) the amount owed for change orders or additional work required to carry out the contract; (3) reasonable and necessary attorney's fees that are equitable and just; and (4) interest as allowed by law.").

**59.** Tex. Civ. Prac. & Rem.Code § 114.004(a) ("The total amount of money awarded in an adjudication brought against a state agency for breach of an express provision of a contract subject to this chapter is limited to the

following: (1) the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation; (2) the amount owed for written change orders; (3) reasonable and necessary attorney's fees based on an hourly rate that are equitable and just if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract; and (4) interest at the rate specified by the contract or, if a rate is not specified, the rate for postjudgment interest under Section 304.003(c), Finance Code, but not to exceed 10 percent.").

**60.** *See* Black's Law Dictionary 609 (10th ed.2014).

**61.** *Id.* at 1279.

**62.** *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex.2011) ("Consequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts. They are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it.") (quoting *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex.1998) (per curiam)).

as a part of something." [63] "[A]mount[s] owed as compensation for ... owner-caused delays", allowed by Subsection (a)(1), are consequential damages that are recoverable by law, not merely contractual right.[64] Delay damages can be a "balance due and owed" only if that phrase is not limited to amounts stated in the contract.[65]

■ Furthermore, Section 271.153(b) excludes from the "[d]amages awarded ... under a contract" consequential damages except as allowed in Subsection (a)(1). If the latter provision limited recovery to amounts stated in the contract, Subsection (b) would be surplusage: a claimant could recover all amounts stated in the contract, and all consequential damages stated in the contract. Read together, Subsections (a)(1) and (b) allow recovery of contract damages, including delay damages, but excluding other consequential damages. Nothing in the rest of Section 271.153 suggests that recoverable damages must be stated in the contract.[66]

---

**63.** *See* BLACK'S LAW DICTIONARY at 880; *Chickasaw Nation v. United States*, 534 U.S. 84, 89, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) ("To 'include' is to 'contain' or 'comprise as part of a whole.' WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 609 (1985).").

**64.** *See Jensen Constr. Co. v. Dallas Cnty.*, 920 S.W.2d 761, 770 (Tex.App.-Dallas 1996, writ denied) ("Generally, a contractor is entitled to recover damages for losses due to delay and hindrance of work if the contractor proves: (1) its work was delayed or hindered; (2) it suffered damages because of the delay or hindrance; and (3) the owner of the project was responsible for the act or omission which caused the delay or hindrance. However, no damage for delay provisions may preclude recovery of delay damages by the contractor." (citations and internal quotation marks omitted)), *overruled in part on other grounds by Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 251 (Tex.2002); *Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 132–134 (Tex.App.-Beaumont 1993, writ denied); *Indus. Constr. Mgmt. v. DeSoto Indep. Sch. Dist.*, 785 S.W.2d 160, 162 (Tex. App.-Dallas 1989, no writ); *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 148 (Tex.App.-Houston [14th Dist.] 1985, no writ); *City of Houston v. R.F. Ball Constr. Co., Inc.*, 570 S.W.2d 75, 77 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Housing Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 884–885, 890–891 (Tex.Civ.App.-Dallas 1959, writ ref'd n.r.e.) (holding NDFD clause did not bar delay damages found to have been caused by owner arbitrarily and capriciously-defined as "willful and unreasoning action without due consideration and in disregard of the facts, circumstances, and the rights of other parties involved"-even though NDFD clause barred delay damages "from any cause"); *U.S. ex rel. Wallace v. Flintco*, 143 F.3d 955, 964–965 (5th Cir.1998) (holding NDFD clause did not preclude recovery of delay damages caused by owner's active interference with the contractor's performance, without considering impact of NDFD language); *see generally* P.V. Smith, Annotation, *Right of Building or Construction Contractor to Recover Damages Resulting from Delay Caused by Default of Contractee*, 115 A.L.R. 65 (1938).

**65.** The dissent argues that because an amount cannot be "due and owed" unless it is "provided for or contemplated in" the contract, delay damages, which are expressly included in Section 271.153(a)(1), must also be "provided for or contemplated in" the contract. *Post* at 113. If the premise were true, then the conclusion would follow. "A including B" usually means that A is the larger group. But the dissent's "provided for or contemplated in" limitation simply is not in or suggested by the text. The "including" phrase proves the flaw in the dissent's position: *"any* amount as compensation for ... delay damages" (emphasis added), which amount may or may not be provided for in the contract, cannot be included in "the balance due and owed ... under the contract" if that phrase is limited to amounts provided for in the contract. Of course, "any Texas city, including Athens", to use the dissent's example, is limited to one, but the example, like the dissent's statutory construction, assumes a limitation to Texas cities when that is the very issue in dispute. A more apt example is "a city, including *any* named Athens", which is a longer list.

In support of its argument, the Port cites two sentences from the remarks made by the bill sponsor introducing the Local Government Contract Claims Act during a House committee hearing. But we have repeatedly held that "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute." [67] The Port also cites our opinion in *Kirby Lake*, where we stated that the reimbursement obligation stated in the contract was "due and owed". [68] But we did not analyze the phrase, and we certainly did not suggest that damages not set out in the contract cannot be "due and owed". [69]

66. The dissent argues that damages "under" a contract are only those "provided for or contemplated in" the contract, but "under the contract" is used to refer generally to damages available on a contract claim. *See, e.g., CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 244 (Tex.2002) (referring to "liability for money damages under the contract"); *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 950 S.W.2d 371, 373 (Tex.1997) (referring to the need for "extrinsic evidence ... to calculate damages under the contract"). Further, parties entering into a contract presumably contemplate that contract damages will be available if that contract is breached. *See City of Houston v. Williams*, 353 S.W.3d 128, 141 (2011) ("[I]t is 'settled that the laws which subsist at the time and place of the making of a contract ... form a part of it, as if they were expressly referred to or incorporated in its terms.' ") (suit by retired firefighters based in part on city ordinances could be characterized as one for breach of contract under Section 271.152); *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987) ("The law[ ] existing at the time a contract is made becomes a part of the contract and governs the transaction."); *Kerr v. Galloway*, 94 Tex. 641, 64 S.W. 858, 860 (1901) ("Under a familiar rule, frequently announced, the law enters into the contract, and becomes a part of it."); *see also Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 315 (Tex. 1965) ("Contracting parties generally select a judicially construed clause with the intention of adopting the meaning which the courts have given to it."). The dissent argues that limiting recovery to contractual damages is no limit at all, but damages are but one item in a list that includes attorney fees and interest, even if not provided for in the contract. The dissent argues that allowing recovery of contractual damages under Section 271.153(a)(1) renders subsection (2) superfluous, but the latter provision clarifies that change orders can be the basis for recovery, even if it were argued that they were not "under the contract".

67. *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex.2011); *accord In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466–467 (Tex.2011); *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 191–192 (Tex.2010) (Wainwright, J., dissenting); *AT&T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–529 (Tex.2006); *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex.1993).

68. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex.2010).

69. The dissent also relies on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex.2011), for its argument that recoverable damages must be "provided for or contemplated in" the contract. In that case a city contracted for construction of a water supply system, and later the contractor sued for the cost of remediating injury to the system caused by the city's sewer contractors. *Id.* at 410–411. We concluded that the damages sought "were not those provided for or contemplated in the Water Supply Agreement and [were] not a 'balance due and owed' under that contract. Nor [were] these costs the 'direct result of owner-caused delays or acceleration....' " *Id.* at 413. The dissent argues that the phrase, "provided for or contemplated in", was really intended to be a standard for determining whether an amount is "due and owed ... under" a contract. But the Court clearly gave two independent reasons for concluding that the claimed damages were not recoverable: they were not "provided for or contemplated in" the contract, "and" they were not "due and owed under" the contract. Sharyland's claimed damages were not a "balance due and owed" because

■■■■ More than half a century ago, we observed that "[t]he universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained."[70] While the Legislature clearly intended to limit the recovery of consequential damages on contract claims permitted by the Act,[71] nothing in the Act suggests that the Legislature intended to create a unique and somehow limited standard for measuring direct damages for breach of contract. Generally, a contractor has a right to delay damages for breach of contract. The parties are free to modify or exclude it by agreement, but unless they do, the right provided by law is as much a part of the contract as the rights the contract expressly creates.[72]

We conclude that the Local Government Contract Claims Act waives immunity for a contract claim for delay damages not expressly provided for in the contract.[73] We now turn to whether Zachry's claim is barred by the no-damages-for-delay provision of the contract.

## III

■■■ We held in *Green International, Inc. v. Solis* that a contractor may generally agree to assume the risk of construction delays and not seek damages.[74] But we noted that the court of appeals in *City of Houston v. R.F. Ball Construction Co.*[75]

they were completely unrelated to the Water Supply Agreement. And by adding, "nor" were the damages for delay, referencing the "including" phrase in Section 157.053(a)(1), we suggested that if the damages had been for delay, they would have been recoverable even if neither "due and owed under" nor "provided for or contemplated in" the contract. We treated the "including" phrase in the statutory provision as stating independently that delay damages are recoverable. Instead of supporting the dissent, *Sharyland* contradicts it.

70. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952).

71. "Consequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts." *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex.2011); *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex.2012). Delay damages are consequential damages.

72. *See supra* note 66.

73. The dissent notes that the State Agency Contract Claims Act, enacted in 2013, contains a provision similar to Section 271.153(a)(1) except that the "including" phrase permits recovery of delay damages only "if the contract expressly provides for that compensation". TEX. CIV. PRAC. & REM. CODE § 114.004(a)(1) (Act of May 26, 2013, 83rd Leg., R.S., ch. 1260, H.B. 586, § 1, http://www.legis.state.tx.us/tlodocs/83R/

billtext/pdf/HB00586F.pdf# navpanes=0 (last visited August 25, 2014)). The dissent argues that the proviso states what is implicit in Section 271.153(a)(1). But if anything, the addition of the proviso suggests that it was not intended in the other three statutes waiving immunity from suit on contract claims.

It should also be noted that the State Contract Claims Act was amended in 2005 (Act of May 27, 2005, 79th Leg., R.S., ch. 988, H.B. 1940, § 1, 2005 Tex. Gen. Laws 3292), the same year the Local Government Contract Claims Act was adopted (Act of May 23, 2005, 79th Leg., R.S., ch. 604, H.B.2039, § 1, 2005 Tex. Gen. Laws 1548), to provide for recovery of delay damages, but did so using the word "and" instead of "including". *Supra* note 59. Using the dissent's argument, one might contend that both statutes intended that delay damages be recoverable whether or not provided for by contract.

74. 951 S.W.2d 384, 387 (Tex.1997).

75. 570 S.W.2d 75 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.); see also *Shintech Inc.*, 688 S.W.2d 144, 148 (Tex.App.-Houston [14th Dist.] 1985, no writ) ("a contractor is entitled to recover damages from an owner for losses due to delay and hindrance of its work if it proves: (1) that its work was delayed or hindered, (2) that it suffered damages because of the delay or hindrance, and (3) that the owner was responsible for the act or omission which caused the delay or hindrance") (citing *R.F. Ball* ).

had listed what it called "generally recognized exceptions" to the enforcement of such agreements

> when the delay: (1) was not intended or contemplated by the parties to be within the purview of the provision; (2) resulted from fraud, misrepresentation, or other bad faith on the part of one seeking the benefit of the provision; (3) has extended for such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; or (4) is not within the specifically enumerated delays to which the clause applies.[76]

And we also noted[77] that the court of appeals in *Green* had identified a fifth exception "based upon active interference" with the contractor "or other wrongful conduct", including "arbitrary and capricious acts"—" 'willful and unreasoning actions,' 'without due consideration' and 'in disregard of the rights of other parties.' "[78] The issues in *Green* did not require us to determine whether the courts of appeals in that case and *Ball* were correct in their statement of the law. Zachry contends that the second and fifth exceptions apply here.

The jury found that Zachry's delay damages resulted from the Port's "arbitrary and capricious conduct, active interference, bad faith and/or fraud" as those terms were defined in the charge.[79] The court of appeals concluded that, assuming such conduct fell within the second exception, the exception could not apply if the parties intended the no-damages-for-delay provision to cover the Port's conduct.[80] The provision stated that Zachry could not recover from the Port "any damages arising out of or associated with any delay or hindrance" to its work, even if due to the Port's "negligence, breach of contract or other fault", and that its "sole remedy in any such case" would be "an extension of time." By "other fault", the court concluded, the parties intended to include the kind of misconduct by the Port found by the jury in awarding damages.[81] "As harsh as this result seems," the court explained, the parties must be bound by their agreement.[82] Rejecting Zachry's argument that enforcing the no-damages-for-delay provision made the contract illusory, allowing the Port to delay performance in perpetuity with impunity, the court responded simply that it would not deprive the Port of its bargain.[83]

As a matter of textual interpretation, it is doubtful whether the rule of *ejusdem generis* would allow "other fault", following "negligence" and "breach of contract", to include the kind of deliberate, wrongful conduct the Port was found by the jury to have engaged in.[84] That interpretation is

---

76. *Green*, 951 S.W.2d at 387 (citing *Ball*, 570 S.W.2d at 77 & n. 1).

77. *Id.* at 388.

78. *Argee Corp. v. Solis*, 932 S.W.2d 39, 63 (Tex.App.-Beaumont 1995), *rev'd on other grounds sub. nom. Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex.1997); *Housing Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 891 (Tex. Civ.App.-Dallas 1959, writ ref'd n.r.e.).

79. *Supra* note 7.

80. 377 S.W.3d 841, 850 (Tex.App.-Houston [14th Dist.] 2012).

81. *Id.* at 850.

82. *Id.*

83. *Id.* at 851–852.

84. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex.2010) ("[T]he principle of ejusdem generis warns against expansive interpretations of broad language that immediately follows narrow and specific terms, and counsels us to construe the broad in light of the narrow."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012) ("Where general

especially doubtful, given the context in which no-damages-for-delay provisions are used. An amicus brief explains:

> Based on their years of experience, education, and training, [contractors] can assess potential delaying events when estimating and bidding public works. For example, they can make a judgment on the quality and completeness of the plans and specifications, determine potential delays resulting from material shortages, analyze historical weather data for potential delays, and assess possible delays from soil conditions by studying soil testing reports furnished by most owners. However, they cannot assess potential delays that may arise due to an owner's direct interference, willful acts, negligence, bad faith fraudulent acts, and/or omissions.[85]

Regardless, the purpose of the second *Ball* exception is to preclude a party from insulating himself from liability for his own deliberate, wrongful conduct.

■ We have indicated that pre-injury waivers of future liability for gross negligence are void as against public policy.[86] Generally, a contractual provision "exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."[87] We think the same may be said of contract liability. To conclude otherwise would incentivize wrongful conduct and damage contractual relations. This conclusion is supported by lower court decisions in Texas[88] and court decisions in at least 28 American jurisdictions.[89] We join this overwhelming consensus. The Port

words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned".).

**85.** Brief of the Associated General Contractors of Texas, Inc. as Amicus Curiae, at 2. In support of Zachry's petition for review, we received amicus briefs and letters from the Texas Aggregates and Concrete Association; the Texas Civil Justice League; Associated General Contractors of Texas; Texans for Lawsuit Reform; Zurich Surety; Associated Builders and Contractors of Texas; Associated General Contractors—Texas Building Branch; the National Electrical Contractors Association; the National Systems Contractors Association; and the American Subcontractors Association and the American Subcontractors Association of Texas. Amicus briefs in support of the Port have been submitted by The Texas Conference of Urban Counties; the City of Houston; the Texas Municipal League and the Texas City Attorneys Association; Harris County; Travis County; the City of Fort Worth; the City of Arlington; the City of Dallas; and the Dallas/Fort Worth Airport Board.

**86.** *Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 687 (Tex.2008) (Hecht, J., concurring); *Crowell v. Hous. Auth. of Dallas,* 495 S.W.2d 887, 889 (Tex. 1973); *see also Sw. Elec. Power Co. v. Grant,*

73 S.W.3d 211, 219–222 (Tex.2002) (suggesting that, generally, a tariff or contract provision including a pre-injury waiver of liability for gross negligence or willful misconduct may be so unreasonable as to violate public policy). Zachry also points out that we have noted that the courts of appeals have "found a pre-injury release of gross negligence invalid as against public policy". *Memorial Med. Ctr. of E. Tex. v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997).

**87.** RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981).

**88.** *Argee Corp. & Seaboard Sur. Co. v. Solis,* 932 S.W.2d 39, 52–53 (Tex.App.-Beaumont 1995), *rev'd on other grounds sub nom. Green Int'l, Inc. v. Solis,* 951 S.W.2d 384 (Tex.1997); *see also Alamo Cmty. College Dist. v. Browning Constr. Co.,* 131 S.W.3d 146, 162 (Tex.App.-San Antonio 2004, pet. dism'd by agr.); *City of Houston v. R.F. Ball Constr. Co., Inc.,* 570 S.W.2d 75, 77 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Hous. Auth. of Dallas v. Hubbell,* 325 S.W.2d 880, 884–885, 890–891 (Tex.Civ.App.-Dallas 1959, writ ref'd n.r.e.).

**89.** *See, e.g., U.S. Steel Corp. v. Mo. Pac. R.,* 668 F.2d 435, 438–439 (8th Cir.1982) (Arkansas law); *Dynalectric Co. v. Whittenberg Constr.*

argues that the cases from other jurisdictions are inapposite because those jurisdictions all recognize a party's duty of good faith in performing a contract, and Texas does not.[90] But the law need not impose a duty of good faith on a party to prohibit him from attempting to escape liability for his future, deliberate, wrongful conduct. The Port argues that withholding enforcement of a no-damages-for-delay provision is in derogation of freedom of contract. But that freedom has limits. "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." [91] Enforcing such a provision to allow one party to intentionally injure another with impunity violates the law for the reasons we

Co., No. 5:06–CV–00208–JHM, 2010 WL 4062787, at *8 (W.D.Ky. Oct. 15, 2010); *Law Co. v. Mohawk Const. & Supply Co., Inc.*, 702 F.Supp.2d 1304, 1325–1327 (D.Kan.2010); *Kiewit Constr. Co. v. Capital Elec. Constr. Co.*, No. 8:04 CV 148, 2005 WL 2563042, at *7–8 (D.Neb. Oct. 12, 2005); *Pellerin Constr., Inc. v. Witco Corp.*, 169 F.Supp.2d 568, 583–587 (E.D.La.2001); *RaCON, Inc. v. Tuscaloosa Cnty.*, 953 So.2d 321, 339–340 (Ala.2006); *Tricon Kent Co. v. Lafarge N.A., Inc.*, 186 P.3d 155, 160–161 (Colo.App.2008); *White Oak Corp. v. Dept. of Transp.*, 217 Conn. 281, 585 A.2d 1199, 1203 (1991); *Wilson Contracting Co. v. Justice*, No. 508 CIV.A.1974, 1981 WL 377680, at *1–2 (Del.Super.Ct. Jan. 22, 1981); *Blake Constr. Co. v. C.J. Coakley Co.*, 431 A.2d 569, 578–579 (D.C.1981); *Newberry Square Dev. Corp. v. S. Landmark, Inc.*, 578 So.2d 750, 752 (Fla.Dist.Ct.App.1991); *MElectric Corp. v. Phil–Gets Int'l Trading Corp.*, No. CVA12–014, 2012 WL 6738260, at *9–11 (Guam Dec. 27, 2012); *Grant Constr. Co. v. Burns*, 92 Idaho 408, 443 P.2d 1005, 1012 (1968); *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 205 Ill.Dec. 98, 642 N.E.2d 1215, 1222 (1994); *Owen Constr. Co. v. Iowa St. Dept. of Transp.*, 274 N.W.2d 304, 306–307 (Iowa 1979); *State Highway Admin. v. Greiner Eng'ng Sciences*, 83 Md. App. 621, 577 A.2d 363, 372 (1990); *Phoenix Contractors, Inc. v. Gen. Motors Corp.*, 135 Mich.App. 787, 355 N.W.2d 673, 676–677 (1984); *Tupelo Redev. Agency v. Gray Corp.*, 972 So.2d 495, 511–512 (Miss.2007); *J.A. Jones Constr. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 89 P.3d 1009, 1014–1016 (2004); *Edwin J. Dobson, Jr., Inc. v. State*, 218 N.J.Super. 123, 526 A.2d 1150, 1153 (N.J.Super.Ct.App.Div.1987); *Corinno Civetta Constr. Corp. v. New York*, 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905, 909–910 (1986); *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Comm'rs*, 152 Ohio App.3d 95, 786 N.E.2d 921, 928 (2003); *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613–614 (Pa.Commw.Ct.2006); *Ayers–Hagan–Booth, Inc. v. Cranston Hous. Auth.*, No. C.A. 74–2897, 1975 WL 174130, at *2–5 (R.I.Super. Nov. 24, 1975); *U.S. v. Metric Constructors, Inc.*, 325 S.C. 129, 480 S.E.2d 447, 448–451 (1997); *Thomas & Assoc. v. Metro. Gov't of Nashville*, No. M2001–00757–COA–R3–CV, 2003 WL 21302974, at *14 (Tenn.Ct.App. June 6, 2003); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983); *W. Eng'rs, Inc. v. State Road Comm'n*, 20 Utah 2d 294, 437 P.2d 216, 217 (1968); *John E. Gregory & Son, Inc. v. A. Guenther & Sons Co.*, 147 Wis.2d 298, 432 N.W.2d 584, 586 (1988). *But see Wes–Julian Constr. Corp. v. Commonwealth*, 351 Mass. 588, 223 N.E.2d 72, 76–77 (1967). *See generally* Maurice T. Bruner, Annotation, *Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract*, 74 A.L.R.3d 187, 201 § 2[a] (1976) ("it is well established, apart from a single jurisdiction, that there are certain exceptions" to NDFD clauses).

**90.** *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983).

**91.** *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex.2004); *accord Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.2d 811, 815 (Tex.1982) (recognizing "the parties' right to contract with regard to their property as they see fit, so long as the contract does not offend public policy and is not illegal"); *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497, 498 (1922) ("The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal."); *James v. Fulcrod*, 5 Tex. 512, 520 (1851) ("That contracts against public policy are void and will not be carried into effect by courts of justice are principles of law too well established to require the support of authorities.").

have explained. The Port also argues that Zachry is a sophisticated party, a very large construction company that can protect itself. But the law's protection against intentional injury is not limited to the helpless. Finally, the Port argues that the conduct found by the jury does not qualify for the exception. But the jury charge tracked the language of the second and fifth exceptions. The charge correctly described the misconduct that cannot be covered by a no-damages-for-delay provision.

Accordingly, we conclude that the no-damages-for-delay provision, Section 5.07 of the parties' contract, was unenforceable.

## IV

Several issues remain.

*First:* Zachry's contends that it is entitled to recover the $2.36 million that the Port withheld as liquidated damages for Zachry's failure to meet deadlines. For each progress payment, Zachry executed a document entitled "Affidavit and Partial Release of Lien", which contained the following language:

> [Zachry] hereby acknowledges and certifies that [the Port Authority] has made partial payment to [Zachry] on all sums owing on Payment Estimate Number [——] and that it has no further claims against [the Port Authority] for the portion of the Work completed and listed on the Schedule of Costs in Payment Estimate Number [——].

Zachry contends that the releases covered only liens. The Port counters that the releases covered all claims for payment. The trial court concluded that the release language was ambiguous on the issue and charged the jury to determine its effect.

The jury failed to find that the release language covered Zachry's claims for liquidated damages withheld by the Port. The court of appeals held that the releases unambiguously covered Zachry's claim for liquidated damages and reversed.[92] We agree that the releases are unambiguous, but we conclude that they do not cover Zachry's claim.

Section 6.07 of the contract conditioned the Port's obligation to make progress payments on Zachry's execution of "waivers and releases of liens" providing "that all amounts due and payable" to Zachry and all subcontractors and suppliers "have been paid in full" and that Zachry "waives, releases and relinquishes any lien ..., security interest and claim for payment". The Port argues that the releases must be construed in light of this requirement because the contract and releases are related contracts and must be read together.[93] While Section 6.07 could be read to require Zachry to release its claims for liquidated damages withheld by the Port in order to obtain progress payments, that is not the issue. Had the Port insisted on express language to that effect, and had Zachry refused, the interpretation of Section 6.07 would be important. Now, however, the issue is not what releases Zachry was contractually required to execute, but the effect of the releases Zachry actually did execute.

The release forms were captioned "Affidavit and Partial Release of Lien". In the form language, Zachry acknowledged "partial payment ... on all sums owing" on a specified invoice and stated that it had "no further claims against [the Port] for the portion of the Work completed and listed on" the invoice. The release plainly refers only to claims for work completed, not for

92. 377 S.W.3d 841.

93. *City of Keller v. Wilson,* 168 S.W.3d 802, 811 (Tex.2005).

liquidated damages withheld for delays—work *not* completed. Furthermore, Zachry actively disputed the Port's right to withhold liquidated damages from the first time the Port did so, and that dispute was never resolved. The purpose of progress payment releases is to ensure that the contractor will not accept payment for work performed and then insist on additional payment for that work. Zachry's releases can no more be interpreted to extend to its claim for liquidated damages the Port withheld than to its claim for delay damages. The jury failed to find that the releases *in fact* covered Zachry's claim. We agree, as a matter *of law.*

*Second:* The trial court did not award Zachry the entirety of the $2.36 million in withheld payments because the jury found that the Port was entitled to an offset of $970,000 as damages for Zachry's use of defective wharf fenders. Zachry contends that the evidence is legally insufficient to support the jury's finding.

To prove its claim for the offset, the Port submitted evidence that the wharf fenders, which protect vessels from damage during the mooring process, were supposed to last for 30 years but became corroded after only 90 days. The Port's expert witness testified that this occurred because the fenders were improperly sealed and, as a result, "the aluminum pores [ ] remain[ed] open [and] filled with sea water." A lab analysis and tests that a structural fabrication company conducted supported the expert's conclusion. Zachry contends that the evidence does not establish that it breached the contract because the sealing or coating on the fenders was "thinned" at 25% in accordance with the contract specifications, and if more thinning was required then the blame lies with the specifications and not with Zachry. Even if there were a breach of contract, Zachry argues that the evidence does not

establish that the fenders were in fact defective or that the breach caused the damages that the jury awarded.

■ Viewing the evidence in the light most favorable to the verdict, we cannot agree that the evidence was legally insufficient to support the jury's verdict. Although Zachry submitted evidence that tended to contradict the Port's evidence, we conclude that there was "more than a mere scintilla" of evidence on which a reasonable jury could find that Zachry breached its obligation to provide fenders that were supposed to last 30 years by providing fenders that began corroding within 90 days, and that the Port sustained damages in the amount of $970,000 as a result, entitling it to an offset against the damages recovered by Zachry.

*Third:* The contract provided that "[i]f [Zachry] brings any claim against the Port Authority and [Zachry] does not prevail with respect to such claim, [Zachry] shall be liable for all attorney's fees incurred by the Port Authority as a result of such claim." The jury found that the Port incurred $10.5 million in attorney fees as a result of Zachry's claim for delay damages, plus additional fees on appeal. Separately, the jury found that the Port incurred $80,250 in attorney fees as a result of Zachry's claim to recover the payments that the Port withheld as liquidated damages, plus additional fees on appeal. In light of our holdings that Zachry prevails on both its claims for delay damages and to recover part of the withheld payments, we reverse the court of appeals' judgment awarding the Port attorney fees.

\*   \*   \*   \*   \*   \*

We hold that Zachry's claim for delay damages is not barred by immunity or by the no-damages-for-delay provision of the contract. We also hold that Zachry is entitled to recover the liquidated damages

withheld by the Port, but that there is evidence to support the jury's award of an offset. We conclude that the court of appeals, erred in awarding Zachry attorney fees. We reverse the court of appeals' judgment, and because the Port has raised a number of other issues, we remand the case to that court for further consideration.

Justice BOYD filed a dissenting opinion, in which Justice JOHNSON, Justice WILLETT, and Justice LEHRMANN joined.

Justice BOYD, joined by Justice JOHNSON, Justice WILLETT, and Justice LEHRMANN, dissenting in part.

Chapter 271 of the Texas Local Government Code waives a local governmental entity's immunity against suits for breach of written contracts for goods and services, but it does so only to allow contractors to recover *"the balance due and owed* by the local governmental entity *under the contract."* TEX. LOCAL GOV'T CODE § 271.153(a)(1) (emphases added). The Court holds that this waiver allows Zachry Construction Corporation to recover common law delay damages that are not part of "the balance due and owed ... under the contract" it entered into with the Port Authority of Houston. In fact, in this

contract, Zachry expressly agreed that the Port Authority would never owe damages for costs that Zachry incurred due to any delay or hindrance. The Court invalidates this no-damages-for-delay clause for public policy reasons. But even after striking that clause, the contract does not provide for or in any way contemplate that the Port Authority would pay for Zachry's delay costs. Because delay costs are not part of "the balance due and owed by [the Port Authority] under [this] contract," I would hold that Chapter 271 does not waive the Port Authority's immunity against Zachry's claim for delay damages, and I would dismiss that claim for lack of jurisdiction. Because governmental immunity bars Zachry's claim for delay damages, I would not reach the issue of whether the no-damages-for-delay clause is void for public policy reasons. I therefore respectfully dissent in part.[1]

## I.

## Governmental Immunity Against Contract Actions

As a local governmental entity, the Port Authority "enjoy[s] governmental immunity from suit, unless immunity is expressly waived." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,* 320 S.W.3d 829, 836 (Tex.2010). Governmental immunity

---

1. For the reasons the Court explains, I agree with its holding in Part II(A) that section 271.153's limitation on recoverable damages is jurisdictional because chapter 271 "does not waive immunity from suit on a claim for damages not recoverable under Section 271.153." *Ante* at 110. I would not reach the public policy issue in Part III of the Court's opinion. In Part IV of its opinion, the Court holds that Zachry can recover on its separate claim for $2.36 million that the Port Authority withheld as liquidated damages, less a $970,000 offset for damages resulting from Zachry's use of defective wharf fenders. *Ante* at 119. I agree with this portion of the Court's opinion, for the reasons the Court has

explained. The funds that the Port Authority withheld as liquidated damages were part of the monthly progress payments that the Port Authority agreed to make for Zachry's services and were part of "the balance due and owed ... under the contract." Section 271.153 thus waives the Port Authority's immunity against Zachry's claim to recover those funds, and the courts have jurisdiction to resolve that claim. The mere fact that the Port Authority denies *liability* on the claim does not negate the statute's waiver of *immunity* from suit for damages that are provided for or clearly contemplated under the contract. *See* TEX. LOCAL GOV'T CODE §§ 271.152–.153.

includes both immunity from liability, "which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006). A governmental entity that enters into a contract "necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit." *Id.* Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction and thus completely bars the plaintiff's claim. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003).

While most damages awards justly impose the financial consequences of a party's wrongdoing on the wrongdoer, a damages award against a governmental entity imposes the financial consequences on innocent third parties: taxpayers. Thus, although "[t]he doctrine of governmental immunity arose hundreds of years ago from the idea that 'the king can do no wrong,' … it remains a fundamental principle of Texas law, intended 'to shield the public from the costs and consequences of improvident actions of their governments.'" *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.,* 442 S.W.3d 297, 300 (Tex.2014) (quoting *Tooke,* 197 S.W.3d at 331–32). In some circumstances, however, justice may demand that the government compensate innocent injured parties even though innocent taxpayers must pay the bill. The challenge is in deciding which circumstances justify a waiver of immunity to allow for such compensation.

Because this decision "requires balancing numerous policy considerations, we have consistently deferred to the Legislature, as the public's elected representative body, to decide whether and when to waive the government's immunity." *Lubbock*

*Cnty.,* 442 S.W.3d at 301. The Legislature may waive the government's immunity, and thereby "consent to suit[,] by statute or by legislative resolution." *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex. 1997). The Legislature has declared that we cannot construe a statute to waive immunity "unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE § 311.034; *see also Tooke,* 197 S.W.3d at 328–29 (agreeing that statutory waiver of immunity must be "by clear and unambiguous language"). If a statute seeks to waive immunity, it "must do so beyond doubt." *Wichita Falls State Hosp.,* 106 S.W.3d at 697.

For the first 154 years of Texas' existence, parties who contracted with the government could not recover for the government's breach unless they first convinced the Legislature to pass a special resolution waiving immunity for their specific claim. *See Fed. Sign,* 951 S.W.2d at 408 (reaffirming previous holdings that "the State is immune from suit arising from breach of contract suits"); TEX. CIV. PRAC. & REM. CODE §§ 107.001–.005 (governing resolutions granting permission to sue the State). Not surprisingly, this often made it difficult for governmental entities to find qualified contractors who were willing to provide goods and services. In 1999, the Legislature enacted Chapter 2260 of the Texas Government Code, providing an administrative procedure through which parties to certain contracts with a State agency or department could recover damages for the agency's breach. *See* TEX. GOV'T CODE §§ 2260.001–.108. Chapter 2260 did not waive the State's immunity, *id.* § 2260.006, but instead provided an alternative administrative process through which the contractor could seek relief. *See id.* The statute provides this option only for parties to certain kinds of contracts, and it limits the administrative award to $250,000 unless the Legislature

separately authorizes a higher award in a specific case. *See id.* § 2260.105.[2]

Although Chapter 2260 provides a limited avenue of relief for those who contract with State agencies and departments,[3] it provides no remedy at all for those who contract with a local governmental entity. The Legislature first addressed local governmental entities in 2003, when it enacted a limited waiver of immunity for certain breach of contract suits against Texas counties. *See* Tex. Local Gov't Code § 262.007. Then, in 2005, the Legislature enacted the provisions of Chapter 271 that are at issue in this case, providing the same limited waiver for certain breach of contract suits against all other types of local governmental entities. *See id.* §§ 271.151–.160. Most recently, in 2013, the Legislature enacted Chapter 114 of the Texas Civil Practice & Remedies Code, providing the same limited waiver of immunity from suits for certain contract claims against State agencies. *See* Tex. Civ. Prac. & Rem.Code §§ 114.001–.013.

As it had done in Chapter 2260, the Legislature · strictly limited the immunity waivers in Chapters 262, 271, and 114, not only in terms of the types of *contracts* under which a party can sue, but also in terms of the types and amounts of *damages* the party can recover. *See* Tex. Local Gov't Code §§ 262.007(b), (c), 271.153; Tex. Civ. Prac. & Rem.Code § 114.004. Thus, the Legislature has only ·recently acted to waive immunity for contract claims, and each time it has done so, it has strictly limited the scope of that waiver. Respectful of the Legislature's prerogative to decide whether, when, and how to waive the State's immunity, and mindful of our obligation to find waivers only in "clear and unambiguous language" that leaves "no doubt," we must carefully and strictly construe and apply these statutory limitations. I dissent in this case because the Court's holding that Zachry's delay damages are recoverable under section 271.153 ignores the statute's limitations.

## II.

### Section 271.153

Section 271.153 is entitled *"LIMITATIONS ON ADJUDICATION AWARDS."* *Id.* § 271.153 (emphasis added).[4] Consis-

---

**2.** Under chapter 2260, an administrative law judge can only award up to $250,000 for a valid breach of contract claim. *See* Tex Gov't Code § 2260.105. Valid claims above $250,000 are referred to the Legislature to decide, in light of appropriate policy considerations, whether to authorize additional funds for payment of the claim. *See id.* § 2260.1055; *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 596 (Tex.2001).

**3.** *See* Tex. Gov't Code § 2260.001(4) (defining "unit of state government").

**4.** All references and citations to section 271.153 in this opinion are to the version of the statute applicable to this suit, as it existed before amendments in 2009, 2011, and 2013. *See* Act of May 20, 2005, 79th Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Law 1548, 1548–49 (codified at Tex. Local Gov't Code § 271.153(a)(1), (2) & (4)). The 2009 amend-

ments added a fourth category of amounts that could be included in the "total amount of money awarded" under subsection (a): "reasonable and necessary attorney's fees that are equitable and just." Act of May 21, 2009, 81st Leg., R.S., ch. 1266, § 8, 2009 Tex. Gen. Law 4006, 4007 (codified at Tex. Local Gov't Code § 271.153(a)(3)). The 2011 amendments added the phrase "including interest as calculated under Chapter 2251, Government Code" after "interest as allowed by law." Act of May 17, 2011, 82nd Leg., R.S., ch. 226, § 1, 2011 Tex. Gen. Law 809, 809 (codified at Tex. Local Gov't Code § 271.153(a)(4)). And the 2013 amendments created an exception to this limitation on damages, permitting recovery of "[a]ctual damages, specific performance, or injunctive relief" in certain contracts involving the sale or delivery of reclaimed water. Act of May 22, 2013, 83rd Leg., R.S., ch. 1138, § 3, 2013 Tex. Gen. Law ——, —— (codified at Tex. Local Gov't Code

tent with its title, subsection (a) of section 271.153 identifies three exclusive categories of damages that a contractor *can* recover in a breach of contract suit against a local governmental entity, and subsection (b) lists three categories of damages that contractors *cannot* recover. *See* TEX. LOCAL GOV'T CODE § 271.153(a), (b). Specifically, contractors *can* recover:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; and

(3) interest as allowed by law.

*Id.* § 271.153(a) (stating that "total amount of money" recoverable "is limited to" these three categories of damages). Conversely, contractors cannot recover:

(1) consequential damages, except as expressly allowed under Subsection (a)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

*Id.* § 271.153(b).

The Court holds that subsection (a)(1) authorizes Zachry to recover its delay damages. While I agree that delay damages *can* be part of "the balance due and owed by [a] local governmental entity un-

der [*some*] contract[s]," I do not agree that they are part of "the balance due and owed by [the Port Authority] under [*this*] contract." To the contrary, this contract expressly provided that the Port Authority would have no liability for any delay damages. And while I agree that "the balance due and owed ... under the contract" can include "compensation for ... owner-caused delays," compensation for owner-caused delays are not part of the balance due and owed under *this* contract, which stated that the contractor "shall receive no financial compensation for delay or hindrance to the Work ... EVEN IF SUCH DELAY OR HINDRANCE RESULTS FROM, ARISES OUT OF OR IS DUE, IN WHOLE OR IN PART, TO THE NEGLIGENCE, BREACH OF THE CONTRACT OR OTHER FAULT OF THE PORT AUTHORITY."

## A. The Balance Due and Owed Under the Contract

Chapter 271 does not define or describe what constitutes "the balance due and owed ... under the contract." When a statute does not give words a specific definition or technical meaning, we use their common, ordinary meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008). Typically, we look to dictionaries to determine the common meaning of words.[5] *See Epps v. Fowler*, 351 S.W.3d 862, 873 (Tex.2011) (Hecht, J., dissenting) ("The place to look for the ordinary meaning of words is ... a dictionary."). When a word has multiple common meanings, we give it the meaning most consistent with the statutory context

---

§ 271.153(c)). None of these amendments relate to or affect the issue in this case.

5. *See, e.g., Morton v. Nguyen*, 412 S.W.3d 506, 512 (Tex.2013); *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 181 (Tex.2013);

*City of Hous. v. Bates*, 406 S.W.3d 539, 547 (Tex.2013); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 171–72 (Tex.2013); *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 656 (Tex.2012); *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex.2012).

in which it is used. *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex.2013); *see also* Tex. Gov't Code § 311.011(a).

In the context of payment obligations, the term "balance" means "the difference between the debits and credits of (an account)." Black's Law Dictionary 170 (10th Ed.). The term "due" means (1) "payable; owing; constituting a debt," when used in relation to a "fact of indebtedness," or (2) "immediately enforceable," when used in relation to "the time of payment." Bryan A. Garner, A Dictionary of Modern Legal Usage, 298–99 (2nd ed.); *see also* Black's Law Dictionary 609 (10th Ed.). The Dictionary of Modern Legal Usage notes that the second definition, "immediately enforceable," is "almost invariably the applicable one" today. Dictionary Of Modern Legal Usage at 299. And the term "owing" means "[t]hat is yet to be paid; owed; due." Black's Law Dictionary 1279 (10th Ed.); *see also* Dictionary Of Modern Legal Usage at 633 (noting that "owed" is the preferred modern usage, over "owing"). The difference between the terms "due" and "owed" is reflected in the fact that something can be owed but not yet due because the date for payment or the contingency on which payment is conditioned has not yet come to pass. *See* Dictionary of Modern Legal Usage at 299. A "bal-ance" that is both "due" and "owed" is thus an amount by which an account's debits exceed its credits that is yet to be paid and immediately enforceable. Stated another way, a balance due and owed is a mature debt. This understanding of the phrase is consistent with both the statutory context, which relates to recoverable monetary obligations under a contract, and with our prior use of the phrase "due and owed" or "due and owing," both in our construction of this statute and more generally.[6]

Importantly, section 271.153 modifies the phrase "the balance due and owed" with the prepositional phrase "under the contract." Tex. Local Gov't Code § 271.153(a)(1). Under the "rules of grammar," *see* Tex. Gov't Code § 311.011, a preposition (here, "under") imposes a relationship between its object (here, "the contract") and its antecedent (here, "the balance due and owed"). *See, e.g.*, The Chicago Manual of Style § 5.173, at 248 (16th ed.); Bryan A. Garner, The Redbook: A Manual on Legal Style, 176 (2nd ed.). As a result, section 271.153(a)(1) does not allow recovery of *all* amounts that may be "due and owed by the local governmental entity," but instead limits the recovery to a due-and-owed balance that arises "under" the written contract for goods and services

---

**6.** *See, e.g., Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex. 2010) ("The existence of a balance 'due and owed' is thus incorporated within the contract—a balance that would come due when voters approve payment in a bond election."); *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 922 (Tex.2010) ("After rigorous analysis, the trial court found that the alleged misrepresentation on each bill—an amount due and owing for a municipal charge—'is uniform to all members of the class....' "); *Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 587 (Tex.1993) ("There is little question that debts, including ad valorem taxes, that are due and owing by an individual during his lifetime are liabilities of that individual.") (emphasis omitted); *Summers v. Consol. Capital Special Trust*, 783 S.W.2d 580, 581 (Tex.1989) ("On October 1, 1983, the Sill note became due and owing."); *Sherman v. First Nat. Bank in Ctr., Tex.*, 760 S.W.2d 240, 241 (Tex.1988) ("In December of 1981, Sherman received a letter from the Bank demanding the payment of several notes, including the $75,000 real estate note which was not due and owing at that time."); *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 641 (Tex.1987) ("The developer, or the association, is a general creditor who ... must stand in line along with [other creditors] for payment of sums due and owing.").

to which the statute applies. *See* Tex. Local Gov't Code §§ 271.151(2)(A), 271.153(a)(1). Thus, under section 271.153(a)(1), the amount recoverable "is limited to" the amount of all mature debts owed under a qualified contract, less any credits due.

The Court, by contrast, concludes that "[a] 'balance due and owed ... under the contract' is simply the amount of damages for breach of contract payable and unpaid." *Ante* at 111. I do not agree that a "balance due and owed ... under a contract" includes all common law damages regardless of whether they are contemplated in the parties' contract. When a payment is not provided for under the contract, but instead arises under the common law, that payment may later be due and owed *under the cort's jud Aent, MMs* not part of "the balance due and owed ... *under the contract." See* Tex. Local Gov't Code § 271.153(a)(1) (emphasis added).

The Court's construction of the statute is contrary to the statute's language and its structure. First, the Court's construction separates the phrase "balance due and owed" from the phrase "under the contract," and then alternatively reads each of them out of the statute. On the one hand, the Court equates the phrase "the balance due and owed" with the phrase "damages ... payable and unpaid," *ante* at 111, and by doing so ignores the statute's actual words. On the other hand, the Court treats the phrase "under the contract" as if it said "under a court's judgment," but does so only by relying on court opinions that address *damages* under a contract, not a "balance due and owed ... under a contract." *Ante* at 111 n. 62, 64. We must read the two phrases together, just as they appear in the statute, and the Court's alternatives for each simply are not equivalents. By equating "the balance due and owed ... under the contract" with "the amount of damages for breach of contract payable and unpaid," the Court shifts the focus from the mature debt that exists "under the contract" when suit is filed to prospective liability that a Court may impose in a breach of contract action.

Second, by holding that "a 'balance due and owed ... under the contract' is simply the amount of damages for breach of contract payable and unpaid," the Court renders subsection (a)(1) a tautology. Under the Court's construction, the amount of damages that is recoverable for a breach of contract is "limit[ed]" to the amount of damages that is recoverable for a breach of contract. Under that construction, the amount of damages is not "limit[ed]" at all.[7]

Third, the Court's construction of subsection (a)(1) renders subsection (a)(2) superfluous. Subsection (a)(2) expressly authorizes the recovery of "the amount owed

---

7. In response, the Court contends that the statute does "limit[]" recovery" because "damages are but one item in a list that includes attorney's fees and interest, even if not provided for in the contract." *Ante* at 113 n. 66. But section 271.153(a) places *"LIMITATIONS ON ADJUDICATION AWARDS"* by authorizing courts to award only amounts that fall within the expressly enumerated categories, which under the current version of the statute include:

- certain types of *damages:* "the balance due and owed ... under the contract"

under section 271.153(a)(1) and "the amount owed for change orders or additional work" under (a)(2);
- certain types of *attorney's fees:* "reasonable and necessary attorney's fees that are equitable and just" under (a)(3); and
- all *interest* allowed by law under (a)(4).

*See* Tex. Local Gov't Code § 271.153. The Court's reading of section (a)(1) does not alter the scope of recoverable attorney's fees or interest, it simply expands the scope of authorized damages to include all recoverable damages. Therefore, it does not limit recoverable damages at all.

for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract." Tex. Local Gov't Code § 271.153(a)(2). If, as the Court holds, subsection (a)(1) authorizes the recovery of all common law damages recoverable for breach of the contract, then subsection (a)(1) already authorizes recovery of amounts owed for change orders and additional work, and subsection (a)(2) adds nothing to the mix.[8] But if, as I contend, subsection (a)(1) only authorizes recovery of the amounts actually provided for or contemplated within the contract (that is, "the balance due and owed … under the contract"), then subsection (a)(2) adds to that any amounts owed for change orders and additional work that were not originally provided for or contemplated in the parties' contract.

Finally, under the Court's construction of subsection (a)(1), the exception to the exclusion of consequential damages in subsection (b)(1) would completely swallow the rule. Subsection (b)(1) provides that recoverable damages may not include "consequential damages, except as expressly allowed under Subsection (a)(1)." *Id.* § 271.153(b)(1). As the Court notes, "[d]elay damages are consequential damages." *Ante* at 114 n. 71. If subsection (a)(1) authorizes the recovery of all common law damages for breach of contract, then consequential damages, which are recoverable for a breach of contract, are "expressly allowed under Subsection (a)(1)." And in that case, subsection (b)(1) would not exclude *any* consequential damages. *See* Tex. Local Gov't Code § 271.153(a)(1), (b).

In short, under the Court's construction, subsection (a), which says recoverable amounts are "limited" to those specified in subsections (a)(1) through (a)(4), does not in fact "limit" anything; and subsection (b), which says recoverable amounts "may not include" those listed in subsection (b)(1), does not in fact exclude anything.

In addition to the language of the statute, the Court's holding contradicts our precedent on this very point. We have addressed section 271.1 53(a)(1) in three prior decisions, and in each of them we have held, or at least indicated, that a "balance" is "due and owed … under the contract" only if it is "stipulated," "provided for," or at least "contemplated" within the parties' written agreement. *See Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 413 (Tex.2011) ("The kind of damages sought by Sharyland were not those provided for or contemplated in the Water Supply Agreement and are not a 'balance due and owed' under that contract."); *Kirby Lake,* 320 S.W.3d at 840 (holding that the damages sought were part of the balance due and owed under the contract because "the Agreements do stipulate the amount of reimbursement owed upon approval of bond funds"); *Tooke,* 197 S.W.3d at 346 (holding that lost profits from additional work "are consequential damages excluded from recovery under the statute").

In *Tooke,* the Court held that the claimants could not recover after the City of Mexia prematurely terminated their service contract because they "claim[ed] only lost profits on additional work they should have been given," which "are consequential

---

**8.** The Court responds that its construction does not render subsection (a)(2) superfluous because subsection (a)(2) "clarifies that change orders can be the basis for recovery, even if it were argued that they were not 'under the contract.' " *Ante* at 113 n. 66. But this is exactly the point: under the Court's construction, there is no need for such clarification because *everything* that the law permits to be a basis for recovery in a breach of contract action (the *only* claim that can be brought under the statute) can be the basis for recovery under the 271.153(a), regardless of whether it is "under the contract."

damages excluded from recovery under the statute." 197 S.W.3d at 346; *see* TEX. LOCAL GOV'T CODE § 271.153(b)(1). If, as the Court holds today, "a 'balance due and owed ... under the contract' is simply the amount of damages for breach of contract payable and unpaid," *ante* at 125, the Tookes should have been able to recover lost profits under section 271.153(a)(1), and they should not have been excluded as consequential damages under subsection (b)(1) because they fall within the exception for consequential damages expressly authorized under subsection (a)(1). In short, the lost profits in *Tooke* were consequential damages not authorized under the parties contract, just as the Court recognizes Zachry's delay damages to be. Yet we held that the Tookes' lost profits were not recoverable even though they, like Zachry's delay damages, were "damages ... payable and unpaid" and recoverable under the common law for breach of contract.

Similarly, in *Sharyland*, the contractor, the Sharyland Water Supply Corporation, sought to recover its "increased cost to perform" its contractual duty to repair and maintain a water system, which allegedly resulted from the City of Alton's breach of its own contractual duties. 354 S.W.3d at 413. We held that section 271.153(a)(1) did not authorize Sharyland to recover its increased repair and maintenance costs because "[t]he kind of damages sought by Sharyland were not those provided for or contemplated in the Water Supply Agreement and are not a 'balance due and owed' under that contract." *Id.*[9]

In *Kirby Lake*, by contrast, we held that the damages the claimant sought were recoverable as "the balance due and owed ... under the contract" because "the Agreements *do stipulate the amount of reimbursement owed* upon approval of bond funds." 320 S.W.3d at 840 (emphasis added). Consistent with the language of the statute and our precedent, I would hold that section 271.153 does not authorize Zachry to recover its delay damages because those damages are not provided for or contemplated in the parties' agree-

---

9. The Court notes that, in the next sentence in *Sharyland*, the Court stated: "Nor were these costs the 'direct result of owner-caused delays or acceleration....' " *Ante* at 113 n. 69 (quoting *Sharyland*, 354 S.W.3d at 413). The Court asserts that, by this sentence, we treated the "including" clause at the end of subsection 271.153(a)(1) "as stating independently that delay damages are recoverable," and "we suggested that if [the damages sought had been for owner-caused delays], they would have been recoverable even if neither 'due and owed under' nor 'provided for or contemplated in' the contract." *Id.* The Court reads far too much into this language. What we actually said in *Sharyland* was:

> The kind of damages sought by Sharyland were not those provided for or contemplated in the Water Supply Agreement and are not a "balance due and owed" under that contract. Nor are these costs the "direct result of owner-caused delays or acceleration," or the "amount owed for change orders or additional work the contractor [was] directed to perform by [the] local

governmental entity in connection with the contract."

*Sharyland*, 354 S.W.3d at 413. We thus addressed all provisions of subsections (a)(1) and (a)(2), demonstrating that there was no possible basis on which any of them could have authorized the recovery of the repair and maintenance costs that Sharyland sought. *See id.* Sharyland did not argue that its damages were independently recoverable as "owner-caused delay damages," and we did not address the issue for which the Court now cites this language. *See id.* Instead, we simply explained that the damages Sharyland sought did not fit within any of the descriptions in subsection (a)(1) or (a)(2). *See id.* And, consistent with *Tooke* and *Kirby Lake*, we equated "the balance due and owed ... under the contract" with the amounts "provided for or contemplated" in the parties' agreement. *See id.* I address the issue of whether the "including" clause at the end of subsection (a)(1) authorizes delay damages that are not "due and owed ... under the contract" in the next section.

ment, which instead expressly bars recovery of delay costs, and thus are not part of "the balance due and owed by the [Port Authority] under the contract." *See* TEX. LOCAL GOV'T CODE § 271.153(a)(1).

## B. "Including Any Amount Owed as Compensation for the Increased Cost to Perform. . . ."

Relying on the language at the end of section 271.153(a)(1), the Court asserts that "Section 272.153(a)(1) does not require the 'balance due and owed . . . under the contract' to be ascertainable from the contract because, for one thing, this Section expressly includes 'any amount owed as compensation . . . for owner-caused delays,' an amount which cannot be determined in advance, when the contract is executed." *Ante* at 111. To the extent the Court is arguing that the statute authorizes recovery of amounts that are not *quantified* in the contract or ascertainable at the time of contracting, I agree. Amounts need not be quantified in the contract or ascertainable at the time of contracting to be "due and owed . . . under the contract." Delay costs, in particular, cannot be quantified at the time of contracting because the parties cannot predict the length of the delay or how the delay will impact the contractor's work. But parties can, and sometimes do, agree that the owner will compensate the contractor for owner-caused delays, and when they do, the delay costs are recoverable under the statute. Here, however, the parties did not agree that the Port Authority would compensate Zachry for owner-caused delays; instead, they expressly agreed that Zachry would receive "no financial compensation for delay or hindrance to the Work . . . EVEN IF SUCH DELAY OR HINDRANCE" was owner-caused.

The Court misconstrues the language at the end subsection (a)(1) to independently authorize recovery of "any amount owed as compensation . . . for owner-caused delays," even if that amount is not part of "the balance due and owed . . . under the contract." *Ante* at 111. In doing so, the Court overlooks the key word that connects these two phrases: "including." The word "including" in this subsection does not expand the meaning of the words that come before it ("the balance due and owed"); rather, it limits the meaning of the words that come after it ("any [owner-caused delay damages]") to "include" only those owner-caused delay damages that are in fact "due and owed." *See* BLACK'S LAW DICTIONARY at 766 (defining "include" to mean "contain as part of something"). The Court thus reads subsection (a)(1) as authorizing recovery of the balance due and owed . . . under the contract *and* (or *plus*) any delay damages, when in fact the statute authorizes recovery of "the balance due and owed . . . under the contract . . . , *including any amount owed*" as damages for owner-caused delays. TEX. LOCAL GOV'T CODE § 271.153(a)(1) (emphasis added).

For example, if a franchise agreement authorized a franchisee to operate "in any Texas city, including Athens," the agreement would permit operations in Athens, Texas, but not in Athens, Greece, or Athens, Georgia. The word "including" is not a synonym for the word "and." It does not expand the meaning of "any Texas city" to include Athens, Greece, or Athens, Georgia, merely because those cities are also named "Athens." Instead, it limits the scope of the reference to "Athens" to the "Texas city" by that name.[10] In the

10. Or, to use the Court's "more apt example," *see ante* at 112 n. 65, the phrase "a city, including any named Athens," includes any city named Athens, which (as the Court notes) is "a longer list," but it still only "includes" *cities* named Athens. It would not include a

same way, the word "including" in subsection 271.153(a)(1) does not mean "and." It does not expand the meaning of "the balance due and owed ... under the contract" to include "owner-caused delay damages" that are not due and owed under the contract. Instead, it limits the scope of the reference to "owner-caused delay damages" to those "owner-caused delay damages" that are part of "the balance due and owed ... under the contract."

The language the Legislature used in its most recent statutory waiver of immunity for breach of contract suits further confirms this point. *See* TEX. CIV. PRAC. & REM.CODE § 114.004. In this statute, through which the Legislature waived immunity for certain contract claims against state agencies just last year, the Legislature used the same language it used in section 271.153, but added a final clause to further clarify that the amount recoverable "is limited to":

> the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration *if the contract expressly provides for that compensation....*

*Id.* § 114.004(a)(1) (emphasis added). While the Court contends that the inclusion of the emphasized language gives this statute a meaning that is different than the meaning of section 271.153(a)(1), which does not include the emphasized language, that contention is unsupportable within this context. The language of sections 114.004 and 271.153 (and, for that matter, 262.007) are in all material respects the

same, demonstrating that the Legislature intended to follow a uniform approach in strictly limiting the scope of these statutory waivers of immunity. More importantly, by using the same "including" language that appears in section 271.153, section 114.004 confirms that both statutes only permit recovery of owner-caused delay damages that are "included" within "the balance due and owed ... under the contract." If anything, section 114.004(a)(1) narrows the scope of recoverable damages by requiring that the contract "*expressly* provide[ ] for" the payment of such compensation.

Parties to construction contracts often allocate unquantified costs between themselves, just as Zachry and the Port Authority did with delay costs. Zachry and the Port Authority allocated all of Zachry's delay-related expenses and losses to Zachry, even if the Port Authority was at fault for the delay. But parties to construction contracts sometimes choose a different allocation, obligating an owner to reimburse the contractor for some or all owner-caused delay costs. *See, e.g., Mas-Tec N. Am., Inc. v. El Paso Field Servs., L.P.*, 317 S.W.3d 431, 452 (Tex.App.-Houston [1st Dist.] 2010) (involving construction contract in which owner agreed to compensate contractor for certain owner-caused delays) *rev'd*, 389 S.W.3d 802 (Tex.2012) (holding that contract allocated all risk of unknown obstructions in construction path to contractor); *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 148 (Tex.App.-Houston [14th Dist.] 1985, no writ) (involving contract that allocated to the owner's account undue expenses incurred by the contractor as a result of owner-caused delays). If this contract had

---

corporation, or person, or pet named "Athens," because the word "including" limits the second word "Athens" to those that fit within the first word "city." In the same way, the word "including" in section 271.153(a)(1) limits the second phrase "delay damages" to

those that fit within the first phrase "balance due and owed ... under the contract." Any delay damages that are not part of the balance due and owed under the contract are not "included" in the statute's waiver.

included such a clause, I would agree that whatever portion of the delay costs the Port Authority had agreed to pay would constitute a balance due and owed by the Port Authority under the contract, and would thus be recoverable under section 271.153(a)(1). But since the Port Authority did not agree to pay any of Zachry's delay damages, and the contract does not provide for or contemplate the Port Authority's payment of such damages, those damages are not part of "the balance due and owed ... under the contract" and thus are not recoverable under section 271.153.

### III.

### Conclusion

I agree with the Court that Zachry's claim to recover installment payments that the Port Authority withheld as liquidated damages are recoverable under section 271.153 and that Zachry did not unambiguously release that claim, but I would hold that section 271.153 does not waive the Port Authority's immunity against Zachry's claim for delay damages. Based on the language and our prior constructions of the statute, I would hold that section 271.153 permits an award of delay damages only if those damages are provided for or contemplated in the agreement and are thus part of "the balance due and owed ... under the contract." Because this contract did not provide for or contemplate the Port Authority's payment of Zachry's delay damages, I would hold that Zachry's delay damages are not part of "the balance due and owed ... under the contract"; section 271.153 therefore does not authorize an award of those damages in this case; and thus section 271.152 does not waive the Port Authority's immunity against Zachry's suit for such damages.